## GOODENOW *v.* SNYDER.

Where the property of G. has been taken and converted by S., G. may waive the tort and sue in assumpsit.

Where the gold dust of G. was sent to him in charge of R., and where it was subsequently mixed and taken by force from R. and delivered to S., and by S. converted into money; held that G. could recover from S. in assumpsit.

Spanish law as to mixture of gold dust prevails in California.

The decision of a self-constituted tribunal not valid, and should not be respected by judicial tribunals, where coercion has been used.

APPEAL *from Jackson District Court.*

*Opinion by* GREENE, J. This was an action of assumpsit by John E. Goodenow against Alfred Snyder. We learn the nature of the suit from the bill of exceptions. It appears that one Cogswell, who went to California on means furnished by Goodenow, delivered to one Reynolds, in

California, one hundred dollars in quicksilver gold dust for Goodenow; that the gold dust was put in a purse belonging to Reynolds, which also contained some wet-diggings gold dust. That Cogswell said to Reynolds, that he might sell the dust in New Orleans, and have all it would bring, over the one hundred dollars; that while on the Pacific, homeward bound, Reynolds and Snyder, by agreement, submitted a dispute between them to a court and jury on the ship; that the jury thus constituted returned a verdict that Reynolds had stolen some gold dust from Snyder; that by order of the court, the purse, containing the gold dust sent by Cogswell for Goodenow, was taken from Reynold's pocket by force, and given to Snyder, although Reynolds gave notice that one hundred dollars of the gold was sent to Goodenow; that Snyder said at the time, that the gold did not look like that which he had lost, but that it was " all as well," as Reynolds might have changed it, and if Reynolds would prove that the dust had been sent by Cogswell, he would return it; that Snyder sold the dust, and paid the money out for his passage; and that there was a difference between quicksilver dust and that from wet-diggings.

Upon the foregoing state of facts, as shown by the evidence, the plaintiff asked the court to instruct the jury that if they believed that Cogswell gave the dust to Reynolds to bring to Goodenow, and that if he said at the time that Reynolds might sell the same in New Orleans, and have the overplus above one hundred dollars, and that the dust was taken from Reynolds and converted by the defendant to his use, that the plaintiff might recover. That the subsequent mixing of the dust with his own would not destroy the right of Goodenow. This instruction was refused by the court. The jury returned a verdict for the defendant.

1. The plaintiff now contends that the court erred in refusing this instruction to the jury. This question involves

Goodenow *v.* Snyder.

the plaintiff's legal right to recover. In a case like the present, where the property of one has been taken and converted by another, it is obvious that the plaintiff may waive the tort and sue in assumpsit. *Clark* v. *Shee*, 1 Cow., 197 ; *Taylor* v. *Plummer*, 3 Maul. and Sel., 561 ; Story's Agency, § 439.

So far then as the plaintiff's rights are concerned we think he has a remedy in this form of action, and that the court below erred in refusing the instruction asked by him. The fact that the gold dust was put into a bag in which Reynolds had other dust could not change the rights of Goodenow. It appears, by the evidence, that there was a difference between the quicksilver dust, which was sent for Goodenow, and the wet diggings dust which was in the bag before; consequently Goodenow's portion could have been separated from the other.

Besides, there appears to be no difference in the price, per ounce, of the two kinds of dust. Cogswell deposited with Reynolds a certain number of ounces, amounting, at California price, to one hundred dollars; therefore Goodenow's portion could have been taken from the bag by weight, without impairing or changing the value of that portion which was first put into the bag. Hence, by weight also, the dust was susceptible of separation.

Again, it appears that the Spanish laws, in relation to gold mines and mining, still prevail as customs among the gold hunters of California. By these laws the *mixtion* of gold dust is defined, and we learn from them that mixtion does not destroy the individual ownership, whether the mixing is done by accident or design. If inseparably mixed, each owner will be interested *pro tanto*. 5 Am. State Papers, 238, 240.

But in this case, as we have seen, the evidence tends strongly to prove that the gold dust was distinguishable, or it might at least have been separated by weight, and hence we conclude that Goodenow's rights were not impaired by

46

the mixture, and such should have been the instruction of the court below to the jury.

It is urged, however, that as Reynolds had the privilege of selling the dust at New Orleans, and of keeping all he could get over one hundred dollars, that their relation of bailee and bailor no longer subsisted, and that Reynolds became the debtor of Goodenow. But how could this result follow from the mere right conferred upon Reynolds to sell the dust? Where an agent or factor is authorized to sell goods for another, as clerk, or on commission, or for all he could get over a stipulated price, it would be preposterous to say that he could thus be made a debtor for the price of the goods sold to responsible parties. Such an arrangement, however, would just as readily change the relation of principal and factor into that of creditor and debtor, as would the authority given to Reynolds to sell the gold dust, convert his liability from a mere bailee to that of debtor. Under the arrangement with Cogswell, Reynolds could either sell the gold dust or not, at his option. If he sold he was to deliver Goodenow one hundred dollars, as the proceeds; if he did not sell, he was obliged to deliver to him the gold dust itself. He might be regarded as a mere mandatory bailee, as he engaged to deliver the dust without reward, and was only to have a certain surplus in case he sold it at New Orleans.

We conclude, then, in the language of the first assignment of errors, that the court below erred in refusing to give the jury the instruction asked for by plaintiff's counsel.

2. The only other assignment to be considered is, that the court erred in charging the jury. In relation to the trial on board of the ship, on the Pacific Ocean, the court charged as follows : " If there was a dispute between Snyder and Reynolds, and they agreed to submit the dispute to a judge and jury selected by them, or approved by them, I am of the opinion that as between them, the judgment of that tribunal is final, and I think it the duty of both courts

Goodenow v. Snyder.

and jurors, in this country, to require a strong case, to induce them to disturb the decision of a self-constituted tribunal." Again, the court charged the jury, that " if the evidence shows that a specific amount of gold dust was given to Reynolds, that it was mixed with his own, and that he was to have the right to exchange it for coin, or other things, and pay Goodenow a similar amount when he returned home from California, then Goodenow had no right to the specific gold dust itself, and cannot recover in this form of action." The last portion of these instructions was erroneous, for reasons already expressed in this opinion. We think too, it was calculated to mislead the jury in relation to the decision of the self-constituted tribunal on ship board. Where a man is under duress, and accused of theft, before a ship load of passengers, or before any other crowd of citizens, and under the emotions of fear, is constrained to agree to a trial before a portion of them, we think the proceeding too much assimulated to lynch trials to command the respect or commendation of judicial tribunals; especially where such proceedings, as in the present case, affect the rights of third parties, who had no participation in, or notice of them. There should at least be no hesitation to disturb their decision, so far as it affected the rights of Goodenow, who was in no way a party to the transaction.

We conclude then that the court below not only erred in refusing to give the instructions asked by the plaintiff, but also in giving the charge to the jury.

Judgment reversed.

*Smith & McKinley*, for appellant.

*T. S. & D. S. Wilson*, and *Hempstead & Burt* for appellee.